## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **WILLIAM F. KAETZ,** | |
| **Plaintiff,** | |
| **v.** | Civ. No. 22-03469 (KM) (JRA) |
| **UNITED STATES OF AMERICA; US DEPARTMENT OF JUSTICE; EDUCATIONAL CREDIT MANAGEMENT CORP.; EXPERIAN; TRANSUNION; EQUIFAX INC; LAW OFFICES OF KENNETH L. BAUM; KENNETH L. BAUM; SCHUCKIT & ASSOCIATES; CAMILLE R. NICODEMUS; WILLIAM R. BROWN; PRICE MEESE SHULMAN & D'ARMINIO; DOROTHY A. KOWAL; SEYFARTH SHAW LLP; ROBERT T. SZYBA; CLARK HILL INTERNATIONAL LAW FIRM; and BORIS BROWNSTEIN, ESQ.,** | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

*Pro se* plaintiff William F. Kaetz filed this civil action against the United States of America and the United States Department of Justice ("DOJ" and together, the "Federal Defendants"), along with Educational Credit Management Corp. ("ECMC"); Experian Information Solutions, Inc. ("Experian"); Equifax Inc. ("Equifax"); the Law Office of Kenneth L. Baum LLC; Kenneth L. Baum; Schuckit & Associates, P.C. ("Schuckit"); Camille R. Nicodemus; Trans Union, LLC; William R. Brown; Price Meese Shulman & D'Arminio ("Price Meese"); Dorothy A. Kowal; Seyfarth Shaw LLP; Robert T. Szyba; Clark Hill, PLC; and Boris Brownstein, Esq. (collectively, the "Defendants"). Kaetz asserts that 1) 11 U.S.C. § 523(a)(8) is unconstitutional,

and 2) Defendants committed fraud, fraud on the court, and various civil rights violations based on their involvement in a prior action he brought in this Court: *Kaetz v. Educ. Credit Mgmt. Corp. et al.*, Case No. 2:16-CV-09225 (the "2016 Action").[1]

Now before the Court are three sets of motions: 1) Defendants' motions to dismiss Kaetz's complaint (DE 39, 42, 56, 58, 59, 62, 90), primarily on preclusion grounds and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6);[2] 2) Kaetz's cross motions to strike (DE 41, 66, 67, 68, 69, 91) each of Defendants' motions to dismiss; and 3) Kaetz's motion for reconsideration (DE 114) of this Court's administrative termination of his January 9, 2023 motion for summary judgment. For the reasons set forth below, Kaetz's motions to strike Defendants' motions to dismiss are **DENIED**, Defendants' motions to dismiss the complaint are **GRANTED**, and Kaetz's motion for reconsideration of this Court's administrative termination of his summary judgment motion is **DENIED**.

## I.   BACKGROUND[3]

The allegations in Kaetz's complaint all arise out of events that occurred during and leading up to the 2016 Action. I begin with pertinent background

---

[1]   The Third Circuit, in reviewing an appeal of one of this Court's orders in the 2016 Action, assigned Kaetz's case a separate case number on the appellate docket: App. No. 20-2592. In his complaint, Kaetz purports to "incorporate" the 2016 Action in bringing the present action. (Compl. at 6.)

[2]   To be clear, one of these motions is not a standalone motion to dismiss, but rather a joint motion (DE 58) by Clark Hill, PLC and Boris Brownstein, Esq. to join in Equifax Information Services LLC, Seyfarth Shaw LLP, and Robert T. Szyba's motion (DE 56) to dismiss Kaetz's complaint. Similarly, Defendant William R. Brown filed a Notice of Joinder (DE 104) in Schuckit & Associates, P.C., Camille R. Nicodemus, and Trans Union, LLC's Joint 12(b)(6) Motion to Dismiss Plaintiff's Complaint (DE 39).

[3]   Certain citations to record are abbreviated as follows:

"DE" = Docket entry number in this case

"Compl." = Kaetz's complaint (DE 1)

regarding Kaetz's claims in the 2016 Action and the outcome of that case. The following is a brief history of the 2016 Action, courtesy of the Third Circuit:

> Kaetz filed a complaint against Educational Credit Management Corporation ("ECMC"), and three credit reporting agencies, Experian, Equifax, and TransUnion (together, the "CRAs"), arising from actions taken to collect and report his student loan debt. Kaetz alleged that in 2012, he filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. He listed ECMC in his petition as a creditor with claims totaling $15,835, which represented his student loans. The Bankruptcy Court granted Kaetz a discharge in 2013. Kaetz alleged that, after the discharge and completion of his bankruptcy case, ECMC used harassing telephone calls and letters to collect the debt. ECMC also informed the CRAs about his debt and the CRAs published the information on his credit report. Kaetz averred that the debt was discharged and that he disputed the debt without success.

---

"Schuckit MTD" = Schuckit & Associates, P.C., Camille R. Nicodemus, and Trans Union, LLC's Joint 12(b)(6) Motion to Dismiss Plaintiff's Complaint (DE 39)

"Price Meese MTD" = Defendants Price, Meese, Shulman & D'Arminio P.C. and Dorothy A. Kowal's Memorandum of Law in Support of Motion to Dismiss Complaint (DE 42-1)

"Equifax MTD" = Memorandum of Law in Support of Defendants Equifax Information Services LLC, Seyfarth Shaw LLP, and Robert T. Szyba Motion to Dismiss Plaintiff's Complaint (DE 56-2)

"Experian MTD" = Defendant Experian Information Solutions, Inc.'s Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (DE 59-1)

"ECMC MTD" = Memorandum of Law in Support of Joint Motion of Defendants Educational Credit Management Corporation, Law Offices of Kenneth L. Baum LLC, and Kenneth L. Baum, to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) (DE 62-1)

"Govt. MTD" = Federal Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint Under Rules 12(b)(1) and (6) (DE 90-1)

Kaetz claimed that the defendants violated the Fair Debt
Collection Practices Act, that the CRAs violated the Fair
Credit Reporting Act, and that the defendants were in
civil contempt of the Bankruptcy Court's discharge
order. He also raised constitutional claims challenging,
among other things, the constitutionality of the
Bankruptcy Code provision excepting student loan debt
from discharge, 11 U.S.C. § 523(a)(8).

ECMC moved to dismiss Kaetz's second amended
complaint for failure to state a claim upon which relief
could be granted. Experian and Equifax filed a joint
motion to dismiss, which TransUnion joined. The
District Court granted the motions and dismissed
Kaetz's complaint. It ruled that many of Kaetz's claims
failed because their premise—that his student loan debt
was discharged in his bankruptcy case—was incorrect.
The District Court explained that student loan debt is
presumptively nondischargeable under § 523(a)(8) and
that Kaetz had not filed an adversary proceeding to
determine whether his debt could be discharged.

Kaetz filed a motion for reconsideration. . . [H]e disputed
the District Court's conclusion that his student loan
debts were not discharged in his bankruptcy case. He
argued that he was not required to file an adversary
proceeding and that he rebutted the presumption that
his debt was nondischargeable by satisfying the
exception in § 523(a)(8) for undue hardship. The District
Court ruled that Kaetz had provided no reason
justifying reconsideration of its prior decision and
denied relief. It stated that Kaetz did not point to a
change in law, new evidence, a clear error of law or fact,
or manifest injustice, but had restated arguments he
had made in opposition to the defendants' motion to
dismiss. The District Court reiterated that his student
loan debt was not discharged in his bankruptcy case.

*Kaetz v. Educ. Credit Mgmt. Corp.*, No. 20-2592, 2022 WL 996422, at *1 (3d Cir.
Apr. 4, 2022), *cert. denied*, 143 S. Ct. 277 (2022), *reh'g denied*, 143 S. Ct. 416
(2022) (affirming this Court's decision denying Kaetz's motion to reconsider its
prior dismissal of his Second Amended Complaint in the 2016 Action).

Kaetz initiated the current action on June 6, 2022, approximately two months after the Third Circuit upheld this Court's dismissal of his Second Amended Complaint in the 2016 Action. In his current complaint, Kaetz articulates two primary contentions:

*First*, Kaetz asserts—once again—that the Bankruptcy Code provision excepting student loan debt from discharge, 11 U.S.C. § 523(a)(8), is unconstitutional. (Compl. at 10.) He argues that the statute is vague insofar as it "fails to provide adequate notice of its scope and sufficient guidelines for its application." As a result, says Kaetz, the statute is being "arbitrarily [and] discriminatorily enforced against debtors" like him. (*Id.* at 15.)[4]

*Second*, Kaetz claims that during the 2016 Action, Defendants "manipulat[ed] court processes" and impermissibly "read language into the [challenged] statute," thereby committing fraud against him, fraud on the court, and various violations of his civil rights. Kaetz alleges that Defendants' actions inflicted various "tort and economic injuries that resulted in cruel and unusual punishment and intentional infliction of emotional distress." (*Id.* at 10, 13, 26.)

Kaetz seeks monetary relief in the amount of $100,009,999.99, as well as injunctive relief prohibiting "the reading of court dicta and [other] language into statutes and rules." (*Id.* at 26.)

All Defendants have filed motions to dismiss Kaetz's complaint. (DE 39, 42, 56, 58, 59, 62, 90.) In response, Kaetz filed cross motions to strike each of the Defendants' motions to dismiss, simultaneously filing opposition briefs in the alternative. (DE 41, 66, 67, 68, 69, 91.) Defendants then filed reply briefs in further support of their motions to dismiss and in opposition to Kaetz's cross

---

[4]     Kaetz's constitutional attack on 11 U.S.C. § 523(a)(8) reasserts his previous challenge in the 2016 Action. *See Kaetz v. Educ. Credit Mgmt. Corp.,* No. 2:16-CV-09225, 2019 WL 4745289, at *3 (D.N.J. Sept. 30, 2019) ("Plaintiff argues that [§ 523(a)(8)] is unconstitutional both on its face and as applied because it is vague and therefore violates Plaintiff's due process rights.")

motions to strike. (DE 70, 73, 80, 82, 83, 94.) Defendants' motions to dismiss and Kaetz's cross motions to strike are fully briefed and ripe for decision.[5]

## II.   MOTIONS TO STRIKE

Before addressing the pending motions to dismiss, I consider Kaetz's six motions to strike them. "As a general matter, motions to strike under Rule 12(f) are highly disfavored." *F.T.C v. Hope Now Modifications, LLC*, No. CIV. 09-1204 JBS/JS, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011) (citations omitted). Viewed through the lens of the Civil Rule explicitly authorizing a motion to strike, Fed. R. Civ. P. 12(f), each of Kaetz's motions is invalid.

Rule 12(f) authorizes a court "to strike from a pleading an insufficient defendant or any redundant, immaterial, impertinent, or scandalous matter." The "pleadings" in a federal action consist of a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if the court so orders, a reply to an answer. Fed. R. Civ. P. 7(a). A motion to dismiss, however, is not a "pleading," and for that matter, neither is a response to a motion to strike. *See Thompson v. Real Estate Mortg. Network, Inc.*, Civ. No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018) (holding that a motion to strike is the improper response to a motion for summary judgment). And even if the Rule applied here, the motion would not be granted; the motions to dismiss contain no impertinent, scandalous, or otherwise improper matter that should not appear in the record.

---

[5]    On January 9, 2023, Kaetz filed a motion for summary judgment. (DE 102.) On January 25, 2023, this Court administratively terminated Kaetz's summary judgment motion "in light of the pending motions to dismiss" and ordered that "[n]o motions for summary judgment shall be filed before the resolution of the pending motions to dismiss." (DE 113.) On January 30, 2023, Kaetz filed a motion for reconsideration of this Court's administrative termination of his summary judgment motion. (DE 114.) Certain Defendants filed briefs in opposition. (DE 115, 116, 117.) On February 23, 2023, Kaetz filed a reply brief in further support of his motion for reconsideration. (DE 119.) Kaetz's motion for reconsideration is also ripe for decision and will be addressed in the final section this Opinion.

Kaetz's motions to strike are therefore denied. His contentions are more properly considered as his opposition to Defendants' motions to dismiss, and I will so consider them in the following section.

### III.   MOTIONS TO DISMISS[6]

Defendants all move to dismiss Kaetz's complaint on the following grounds: 1) Defendants argue that Kaetz's claims are barred by the preclusion doctrines of res judicata and/or collateral estoppel (Schuckit MTD at 6-11, Price Meese MTD at 6, Equifax MTD at 8-11, Experian MTD at 6-11, ECMC MTD at 6-9, Govt. MTD at 9-11.), and 2) Defendants argue that Kaetz's complaint fails to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. 12(b)(6). (Schuckit MTD at 11-14, Price Meese MTD at 7, Equifax MTD at 12-14, Experian MTD at 11-21, ECMC MTD at 9-10, Govt. MTD at 11-18). In the following discussion, I first consider Defendants' preclusion arguments, and then address their arguments regarding the sufficiency of Kaetz's pleading.[7]

---

[6]   Kaetz asserts that this Court has subject matter jurisdiction over his claims, invoking both federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. While it is evident that this Court has subject matter jurisdiction over the claims Kaetz brings under federal law (*e.g.* his several constitutional claims), it is less than clear whether there is complete diversity of citizenship, permitting this Court to exercise original jurisdiction over Kaetz's state law claims (*e.g.*, fraud, intentional infliction of emotional distress). Nevertheless, the presence of federal question jurisdiction would allow me to exercise supplemental jurisdiction over the remaining state claims under § 1367. In sum, I find that the Court has subject matter jurisdiction to decide the pending motions, subject to the caveat in n.7, *infra*.

[7]   Certain Defendants assert additional arguments as to why Kaetz's claims against them must be dismissed.

The Federal Defendants argue that this Court lacks subject matter jurisdiction over Counts II, III, IV, and V of the complaint to the extent the claims therein are brought against them pursuant to the Federal Tort Claims Act ("FTCA"). (Govt. MTD 14-16.) The FTCA, which provides the exclusive remedy for tort claims against the United States, is a limited waiver of sovereign immunity. *See Santos v. United States*, 559 F.3d 189, 193 (3d Cir. 2009). Pursuant to the FTCA, the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of

### A. Preclusion

Defendants assert that Kaetz's complaint must be dismissed on grounds of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion).[8] It is true, of course, that claim and issue preclusion are affirmative defenses, but they may be raised on a motion to dismiss in an appropriate case:

> The defense of claim preclusion, however, may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision. *Cf. Connelly Found. v. Sch. Dist. of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir.1972) (res judicata may be raised in motion to dismiss prior to answer). Specifically, a court may take judicial notice of the record from a previous court proceeding between the parties. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n. 3 (3d Cir.1988).

*Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x. 36, 38 (3d Cir. 2008).

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel,

---

the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2679(b)(1). "Intentional conduct," like fraud or deceit, "is explicitly exempted from the FTCA's waiver of sovereign immunity." *In re Ortho. Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 363 (3d Cir. 2001) (dismissing FTCA claim based on agency's allegedly dishonest and fraudulent behavior); *see also* 28 U.S.C. § 2680(a). Here, the United States has not waived sovereign immunity for the tort claims Kaetz appears to include in his complaint. This Court therefore lacks subject matter jurisdiction over all tort claims Kaetz asserts against the Federal Defendants. Accordingly, I only exercise subject matter jurisdiction over Kaetz's tort claims that are asserted against the remaining Defendants.

The attorney and law firm Defendants who represented certain other Defendants in the 2016 Action argue that the litigation privilege immunizes them from Kaetz's claims to the extent they pertain to that prior lawsuit. (Price Meese MTD 8-9; Equifax MTD 11-12.) I need not consider this argument, given the result of my preclusion and 12(b)(6) analyses.

[8]    I note that the term "res judicata" is sometimes used to refer to the preclusion doctrines collectively. I here use it in its narrower sense as a synonym for claim preclusion.

once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, (1980) (internal citation omitted).

I find that Kaetz's constitutional challenge to 11 U.S.C. § 523(a)(8) is barred by collateral estoppel. Collateral estoppel, or issue preclusion, "prevents relitigation of a particular fact or legal issue that was litigated in an earlier action." *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 169 (3d Cir.1999) (citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 (1979)). Issue preclusion has five essential prerequisites:

> (1) the identical issue was decided in a prior adjudication;
>
> (2) the issue was actually litigated;
>
> (3) there was a final judgment on the merits;
>
> (4) the determination was essential to the earlier judgment; and
>
> (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225–26 (D.N.J. 2015) (line breaks added) (citing *Seborowski,* 188 F.3d at 169). I discuss those five requirements, somewhat out of order.

### 1. *Identical Issue Decided*

Following a thorough analysis of Kaetz's arguments in the 2016 Action, this Court expressly found that 11 U.S.C. § 523(a)(8) was not unconstitutional as applied to Kaetz's bankruptcy case:

> [Kaetz] challenges the constitutionality of 11 U.S.C. 523 §(a)(8), which provides exceptions to bankruptcy discharge. In the relevant bankruptcy proceedings, Plaintiff was granted a discharge under section 727 of title 11, United States Code. A discharge of debt under section 727 does not discharge any debt "for an obligation to repay funds received as an education benefit" unless "excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor." 11 U.S.C. 523 § (a)(8). The debts at

9

issue here are educational loans. Under section 523(a)(8), student loan debt is "presumptively nondischargable 'unless' a determination of undue hardship is made." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010); *see also In re Sperazza*, 366 B.R. 397, 407 (Bankr. E.D. Pa. 2007) (noting that neither party suggested plaintiff's debts to Education Credit Management Corporation, the same defendant here, were anything other than educational loans and therefore "the obligations [were] presumptively nondischargeable"); *In re Jones*, 392 B.R. 116, 124-25 (Bankr. E.D. Pa. 2008) (same). The Bankruptcy Rules "require a party seeking to determine the dischargeability of a student loan debt to commence an adversary proceeding by serving a summons and complaint on affected creditors." *Espinosa*, 559 U.S. 260; *see also In re Miller*, No. 06-1082, 2006 WL 2361819, at *3 (Bankr. W.D. Pa. Aug. 14, 2006); *In re Kahl*, 240 B.R. 524, 530 (Bankr. E.D. Pa. 1999).

Plaintiff argues that the statute is unconstitutional both on its face and as applied because it is vague and therefore violates Plaintiff's due process rights. However, Plaintiff also writes in his Second Amended Complaint that "[t]he Statute is fine" and that "[t]he law is not that ambiguous and it does not need interpretation." Plaintiff seemingly contends that the statute itself is not unconstitutional but rather that "the vagueness doctrine...also should apply to the techniques courts use to decide on legal definitions and requirements." From these statements in the Second Amended Complaint and Plaintiff's brief in opposition, the Court discerns that Plaintiff is challenging how this section of the Bankruptcy Code, 11 U.S.C. § 523 (a)(8), was implemented in his case. The Court finds that, based on Plaintiff's allegations and a review of the underlying bankruptcy order, the statute was properly applied in Plaintiff's proceedings.

Plaintiff contends that his student loan debts were automatically discharged under the undue hardship exception because "11 U.S.C. 523 (a)(8) is neutral and self-executing to creditors and debtors meaning immediately effective without further action, legislation or legal steps, no other process required." As stated above, however, an individual seeking discharge under the undue hardship exception must commence an adversary proceeding in Bankruptcy Court to determine whether his student loan debts were eligible to be discharged. Here, because Plaintiff does not

10

> allege that he commenced an adversary proceeding to determine
> whether his student loans were dischargeable, Plaintiff's debts
> were not discharged through the bankruptcy proceedings.
> Accordingly, Plaintiff's claims fail.

*Kaetz v. Educ. Credit Mgmt. Corp.*, No. 2:16-CV-09225, 2019 WL 4745289, at
*3–4 (D.N.J. Sept. 30, 2019) (record citations omitted).

On Kaetz's subsequent motion for reconsideration, this Court once again
considered Kaetz's "conten[tion] that 11 U.S.C. § 523 is unconstitutional" and
denied it:

> To the extent Plaintiff is challenging how this section of the
> Bankruptcy Code, 11 U.S.C. § 523 was applied in his case, his
> contentions are without merit. As discussed above, 11 U.S.C. § 523
> provides, that a discharge under section 727 does not discharge an
> educational loan. 11 U.S.C. § 523 (a); 11 U.S.C. § 523 (8)(A)–(B).
> The Court finds that, based on Plaintiff's allegations and a review
> of the underlying bankruptcy order, the statute was properly
> applied in Plaintiff's proceedings.

*Kaetz v. Educ. Credit Mgmt. Corp.*, No. 16-CV-09225, 2020 WL 3542382, at *3
(D.N.J. June 30, 2020), *aff'd*, No. 20-2592, 2022 WL 996422 (3d Cir. Apr. 4,
2022) (record citations omitted).

On appeal, the Third Circuit affirmed this Court's dismissal of Kaetz's
constitutional challenge to 11 U.S.C. § 523(a)(8). In particular, the Third
Circuit considered and rejected Kaetz's argument that the statute is
unconstitutionally vague as well as his related contention that "the statute
does not direct the filing of an adversary proceeding." *Kaetz v. Educ. Credit
Mgmt. Corp.*, No. 20-2592, 2022 WL 996422, at *3 (3d Cir. Apr. 4, 2022), *cert.
denied*, 143 S. Ct. 277 (2022), *reh'g denied*, 143 S. Ct. 416 (2022). The Third
Circuit noted that "the Bankruptcy Rules address the applicable procedure"
and held that Kaetz did not "establish[] that the statute is constitutionally
infirm." *Id.*

Clearly, then, both this Court and the U.S. Court of Appeals for the Third Circuit have found that 11 U.S.C. § 523(a)(8) is constitutional, the issue as to which estoppel is sought here.[9]

### 2. *Actually Litigated and Essential to Judgment*

Requirements 2 and 4 are that the issue have been actually litigated and essential to the prior judgment. It is evident from this Court's thorough analysis of Kaetz's arguments regarding the constitutionality of 11 U.S.C. § 523(a)(8), as well as the Third Circuit's review of the matter on appeal (*see* Section III.A.1., *supra*) that the issue was actually litigated. This issue was at the heart of one or more of Kaetz's claims in the 2016 Action and therefore was essential to judgment in that case. Requirements 2 and 4 are satisfied.

### 3. *Final Judgment on the Merits*

Requirement 3 is that the prior judgment have been final. That requirement is clearly satisfied here. On September 30, 2019, this Court dismissed Kaetz's claims pertaining to the constitutionality of 11 U.S.C. § 523(a)(8) with prejudice,[10] and a dismissal with prejudice constitutes an adjudication on the merits "as fully and completely as if the order had been entered after trial." *Petrossian v. Cole*, 613 F. App'x 109, 111–12 (3d Cir. 2015) (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972)). And that dismissal was of course upheld on appeal.

---

[9]    To the extent Kaetz attempts to fashion his constitutional challenge in the present action as a facial attack on the statute to distinguish it from his claims in the 2016 Action—which this Court and the Third Circuit analyzed primarily as an as-applied challenge—his present challenge does not circumvent preclusion. The Supreme Court has directed that there is a higher burden on facial challenges than on as-applied challenges, holding that in a facial attack, a "challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). It therefore follows that if this Court and the Third Circuit upheld 11 U.S.C. § 523(a)(8) as constitutional as applied to Kaetz, it also upheld the statute as constitutional on its face. In short this action presents not a distinguishable but an *a fortiori* case.

[10]    *Kaetz v. Educ. Credit Mgmt. Corp.*, No. 2:16-CV-09225, 2019 WL 4745289, at *6 (D.N.J. Sept. 30, 2019).

### 4. *Identical Party*

Requirement 5 is that the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding. That requirement is satisfied as well. It is undisputed that Kaetz was a party to the 2016 Action. Indeed, he purports to "incorporate" the 2016 Action in his current complaint.

### 5. *Miscellaneous Fairness Factors*

Preclusion doctrines are equitable, and a court must consider the fairness of applying them. Courts—albeit most commonly in more exotic applications, such as offensive collateral estoppel—have considered equitable factors such as the following:

> (a) the party to be estopped had little incentive to vigorously litigate the first action; (b) the first judgment is inconsistent with other judgments on the issue to be estopped; (c) the second action affords procedural opportunities unavailable in the first action (or, more generally speaking that the party to be estopped had a full and fair opportunity to litigate its claims in the first action); or (d) application of collateral estopped would not otherwise be unfair to the defendant.

*E.g., Glictronix Corp. v. Am. Tel. & Tel. Co.*, 603 F. Supp. 552, 563–64 (D.N.J. 1984); *see also Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 518 (D.N.J. 2014) (McNulty, J.) (applying New Jersey law).

Those factors do not militate against the application of collateral estoppel: Kaetz has "vigorously litigate[d]," to say the least, the constitutionality of 11 U.S.C. § 523(a)(8), and its application to his bankruptcy proceedings; there are no inconsistent judgments on the issue; the present action affords Kaetz no opportunities, procedural or otherwise, for full and fair litigation of his claims that were unavailable to him during the 2016 Action; and the application of collateral estoppel in this case results in no unfairness to any party.

All five prerequisites of collateral estoppel, then, are met with respect to Kaetz's challenge to 11 U.S.C. § 523(a)(8), and the fairness factors do not point the other way.

Those estoppel prerequisites are *not* met, however, with respect to Kaetz's remaining claims. The rest of Kaetz's claims pertain to injuries he allegedly sustained during and as a result of the 2016 Action, *e.g.*, violations of his civil rights and injuries stemming from Defendants' alleged tortious conduct. It cannot be the case that these issues, which Kaetz alleges—however frivolously—*arose from* the 2016 Action were identical to issues litigated and decided *during* the 2016 Action, as is required to invoke the doctrine of collateral estoppel. *Fitzgerald*, 92 F. Supp. 3d, at 225–26.

Therefore, at this stage, I will grant Defendants' motions to dismiss on collateral estoppel grounds only in part. I rule that Kaetz's constitutional challenge to 11 U.S.C. § 523(a)(8) is barred by collateral estoppel and must be dismissed.[11]

I therefore proceed to consider, as to Kaetz's remaining claims, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

---

[11]   I acknowledge that in my analysis of Defendants' preclusion arguments, I took up their collateral estoppel argument but declined to address further the related argument that Kaetz's claims are barred by the doctrine of res judicata, or claim preclusion. This is because unlike collateral estoppel, the doctrine of res judicata may only be invoked by the parties, or those in privity with the parties, that appeared in the prior action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). Because this doctrine may only be invoked by a subset of the Defendants—as not all Defendants were party or privy to the 2016 Action—I began my analysis with issue preclusion, which may more straightforwardly be invoked by all Defendants. Having found that Kaetz's constitutional challenge was barred by collateral estoppel, there was no need to analyze the matter from a claim preclusion perspective. I note, however, that had I performed a claim preclusion analysis, it would have led to the same finding I make here that Kaetz's remaining claims are not precluded given that they *arose from* the litigation of the 2016 Action, as opposed to being litigated *during* that case.

### B. Failure to State a Claim

Setting aside the now-precluded constitutional challenge to 11 U.S.C. § 523(a)(8), I construe Kaetz's complaint to be asserting the following claims: 1) *Bivens*[12] claims for constitutional violations under the First, Fifth, Eighth, and Fourteenth Amendments; 2) fraud; 3) fraud on the court; 4) intentional infliction of emotional distress; and 5) "misconduct" for which Kaetz contends the Court should issue sanctions pursuant to Fed. R. Civ. P. 11. (Compl. at 23-26.) In addition, Kaetz invokes the Administrative Procedure Act and the All Writs Act in his request for injunctive relief in the forms of "administrative action" and a "writ . . . to stop the reading of court dicta and language into statutes and rules that do not exist in the statutes and rules." (*Id.* at 26.)

Kaetz has failed to state a viable claim upon which relief can be granted with respect to these alleged causes of action. I will therefore grant Defendants' motions and dismiss the remainder of Kaetz's complaint.

### 1. Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

---

[12]   The reference is to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's *pro se* status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

### 2. *Bivens* Claims

Kaetz asserts *Bivens* claims against unnamed government employees, alleging that they are "liable to [him]" for damages he sustained in connection with their violation of his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments. (Compl. at 23.) Under *Bivens*, a plaintiff must allege 1) a deprivation of a right secured by the Constitution or laws of the United States; and 2) that the deprivation of the right was caused by a person acting under color of federal law. *Hastings v. Hickson*, No. CV158119KMJBC, 2015 WL 7432354, at *2 (D.N.J. Nov. 23, 2015). A *Bivens* claim therefore can be brought only against a federal official, and Kaetz has named no federal official as a defendant.

Because *Bivens* claims cannot be brought against the United States, federal agencies, or private parties—the three types of Defendants that have been sued in the present action—Kaetz's *Bivens* claims must be dismissed. *See, e.g., Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) ("a plaintiff may not use *Bivens* to pursue constitutional claims against the United States or its agencies"); *see also Robertson v. Exec. Dir. Brain Inst. Geisinger Med Ctr.*, 578 F. App'x 76, 77 (3d Cir. 2014) ("It is well-settled that a *Bivens* action can only be brought against federal officials, not private entities.")

(citations omitted). It is therefore not necessary to analyze them further. The *Bivens* claims are dismissed.

### 3. Fraud

Kaetz alleges that Defendants committed fraud against him. (Compl. at 26.) However, Kaetz does not plead facts sufficient to support such a claim.

Under New Jersey law, the five elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (1997); *see Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F.Supp.2d 537, 546 (D.N.J. 2013).

Procedurally, Kaetz's fraud claim is subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). As the Third Circuit has explained, "[a] Plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (citation and quotation marks omitted). In other words, Kaetz may satisfy this requirement by pleading "the date, time and place" of the alleged fraud or deception, or by "otherwise inject[ing] precision or some measure of substantiation" into the allegation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). Additionally, to survive a motion to dismiss, Plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Gray v. Bayer*

*Corp.*, No.Civ.A.08–4716, 2010 WL 1375329, at *3 (D.N.J. Mar. 31, 2010) (citing *Lum*, 361 F.3d at 224).

Kaetz pleads no facts to support his common law fraud claim, which consists of nothing beyond a disagreement with the prior court's legal interpretation. He states that Defendants committed "fraud" against him by "adding and reading language from non-binding obiter dicta into statutes and rules." (Compl. at 26.) He does not allege that he relied to his detriment on any factual misrepresentation made by any of the Defendants. Instead, he appears to claim that all Defendants, by virtue of their involvement in the 2016 Action, must have committed fraud merely because the Court did not rule in his favor.

Kaetz's fraud claim must be dismissed.

### 4. Fraud on the Court

Kaetz alleges that Defendants "deliberately planned a carefully executed [a] scheme to defraud debtors of student loans and to perpetrate a fraud on the court" by "[r]eading language into the Bankruptcy Statutes and Rules." (Compl. at 22.) He further alleges that Defendants "manipulat[ed] court processes" and "controlled the court[']s action with the fraud." (*Id.* at 22, 26.) Once again, Kaetz dresses up a legal disagreement as a claim of "fraud." Kaetz offers no factual basis whatsoever to support these allegations, and his fraud on the court claim will therefore be dismissed.

To prevail on a claim of fraud on the court, the movant must demonstrate by clear and convincing evidence the following four elements:

> (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court.'" *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005); *Thompson v. Eva's Vill. and Sheltering Program*, 2009 WL 3486050, at *10 (D.N.J. Oct. 28, 2009).

*Estate of Sinclair v. Cty. of Union*, No. CIV.A. 05-55 KSH, 2011 WL 3417115, at *2 (D.N.J. Aug. 3, 2011). Such a fraud consists of some "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Hatchigan v. Int'l Bhd. Of Elec. Workers Local 98 Health & Welfare Fund*, 610 F.

App'x 142 (3d Cir. 2015) (quoting *Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987) and *Pizzuto v. Ramirez*, 783 F.3d 1171, 1180 (9th Cir. 2015)).

There has been no miscarriage of justice or egregious conduct in connection with this Court's dismissal of the 2016 Action. The record discloses that Kaetz has been provided every opportunity to fairly present his case in the 2016 Action at the district court level and the appellate level. That he dislikes the outcome and believes both courts misinterpreted the law are not grounds for a finding of "fraud on the court," whether by the court itself or by any of the Defendants. Moreover, Kaetz had a full and fair opportunity to present his arguments in his appeal to the Third Circuit, which affirmed judgment against Kaetz, and this Court obviously lacks the power to sit in review of the Third Circuit's judgment. *Seese v. Volkswagenwerk, A.G.*, 679 F.2d 336, 337, n.1 (3d Cir. 1982) ("The district court is without jurisdiction to alter the mandate of this court on the basis of matters included or includable in defendants' prior appeal.") (citations omitted).

Neither this Court nor the Third Circuit was deceived or defrauded into holding as it did in the 2016 Action. Kaetz's fraud on the court claim will be dismissed.

### 5. Intentional Infliction of Emotional Distress

Kaetz alleges that Defendants "caused [him] . . . intentional infliction of emotional distress." (Compl. at 26.) Though Kaetz fashions this allegation as a statement describing an injury he sustained as a result of Defendants' purportedly tortious conduct, intentional infliction of emotional distress is itself a cognizable cause of action, and I will analyze it as such.

To state a prima facie case for intentional infliction of emotional distress, a plaintiff must plausibly assert that 1) the defendant acted either intentionally to do the act and to produce emotional distress or acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow"; 2) the defendant's conduct is so "extreme and outrageous ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community"; 3) the defendant's intentional or reckless conduct proximately caused the plaintiff's emotional distress; and 4) the plaintiff suffered emotional distress that is "so severe that no reasonable [person] could be expected to endure it." *Juzwiak v. Doe*, 415 N.J. Super. 442, 451 (App. Div. 2010) (citing and quoting *Buckley v. Trenton Saving Fund Socy.*, 111 N.J. 355 (1988)).

Kaetz has not pleaded facts sufficient to support any of the elements of an intentional infliction of emotional distress claim. His allegations do not include any elaboration as to any Defendant's 1) purported intent to cause him emotional distress, 2) how Defendants' conduct was "extreme and outrageous," 3) how this conduct caused Kaetz emotional distress, or 4) the severity of the harm. Kaetz therefore fails to state a claim for intentional infliction of emotional distress. The taking of a legal position in court—even one with which the plaintiff vehemently disagrees—is not extreme and outrageous conduct.

Kaetz's claim of intentional infliction of emotional distress will be dismissed.

### 6. "Misconduct"

Kaetz alleges that Defendants committed "misconduct" by defrauding him. (Compl. at 26.) While "misconduct" does not refer to any specific cause of action, I note that in asserting this claim, Kaetz appears to refer to Fed. R. Civ. P. 11 by suggesting that Defendants' alleged fraud on the court involved "frivolous court filings in violation of court rule 11." (Compl. at 26.) I therefore construe Kaetz's complaint as asserting a claim under Fed. R. Civ. P. 11.[13] However, such a claim must fail. The Rules Enabling Act, 28 U.S.C. § 2072,

---

[13]     Even if Kaetz intended for his "misconduct" count to constitute a motion for sanctions under Fed. R. Civ. P. 11, his motion would be denied as procedurally improper. The rule specifically provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c). Kaetz has made no such separate motion, and in any event, does not describe any "specific conduct" by any Defendant that warrants sanctions.

which authorized the Supreme Court to promulgate the Federal Rules of Civil Procedure, explicitly states that these procedural rules do not create any private right of action. 28 U.S.C. § 2072(b) (providing that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right").[14]

Kaetz's "misconduct" claim does not set forth a cognizable cause of action and will be dismissed.

### 7. Injunctive Relief Pursuant to APA and All Writs Act

Finally, Kaetz seeks injunctive relief, presumably under the Administrative Procedure Act ("APA") and the All Writs Act, requesting both "administrative action" and a "writ . . . to stop the reading of court dicta and language into statutes and rules that do not exist in the statutes and rules." (*Id.* at 1, 26.)

Kaetz's APA claim must fail because under the APA, only "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. "For an agency action to be final under the APA, the action must mark the consummation of the agency's decision-making process, and the action must determine a right or obligation." *Jie Fang v. Dir. U.S. Immigr. & Customs Enforcement*, 935 F.3d 172, 180 (3d Cir. 2019) (citations omitted). Kaetz does not allege any facts regarding a "final agency action" of which he seeks judicial review. Notably, if Kaetz means to challenge actions taken by the DOJ—the only federal agency defendant in this case— during the 2016 Action, his APA claim still fails, as an agency's litigation decisions do not constitute a final agency action. *See, e.g., Tucker v. United States*, No. 2:12CV409DAK, 2013 WL 4498897, at *5 (D. Utah Aug. 19, 2013)

---

[14] To the extent Kaetz's "misconduct" claim refers to "official misconduct" under New Jersey statute, N.J. Stat. Ann. § 2C:30-2, this common law statutory scheme does not provide a private right of action either. *See McBride v. Township of Washington*, C.A. No. 19-17196, 2020 WL 3396802, at *10 (D.N.J. 2020) (dismissing claim with prejudice because "[t]he statute [criminalizing official misconduct] does not contemplate a private or civil right of action," and thus "any amendment … would be legally futile").

(citing *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007)) ("[l]itigation decisions are not agency decisions that can be reviewed under the APA"). Moreover, the APA expressly precludes judicial review of "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) Here, the DOJ had absolute discretion over its litigation decisions in the 2016 Action. *See* 28 U.S.C. § 516.[15] Accordingly, the DOJ's actions in litigating the 2016 Action are not subject to review under the APA. The only relevant decision is the prior decision of this Court, which is reviewable and was reviewed by the Court of Appeals, not by a separate action under the APA.

Kaetz's request for injunctive relief under the All Writs Act fares no better. The All Writs Act, 28 U.S.C. § 1651, grants courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." A writ of mandamus is "an extreme remedy that is invoked only in extraordinary situations." *In re Anderson*, No. 21-2507, 2021 WL 5505405, at *1 (3d Cir. Nov. 23, 2021) (citing *Kerr v. United States Dist. Court*, 426 U.S. 394, 402 (1976)). Writs of mandamus are traditionally used "'only to confine an inferior court to a lawful exercise of its prescribed jurisdiction.'" *Id.* (quoting *Kerr*, 426 U.S. at 402). A district court only has jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.A. § 1361; *see also In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963). Kaetz alleges no such duty owed to him, and the Court is aware of none, that would warrant this Court issuing a "writ . . . to stop the reading of court dicta and language into statutes and rules that do not exist in the statutes and rules." (Compl. at 26.)

---

[15]   *See also Morrison v. U.S. Dep't of Labor*, 713 F. Supp. 664, 669 (S.D.N.Y. May 10, 1989) ("Because this discretionary authority of the Justice Department is absolute, the Court agrees with the federal defendants that the decision not to defend an administrative determination, and the DOL's concomitant withdrawal of that determination, are litigation decisions which are not reviewable under the Administrative Procedure Act.")

Here, Kaetz asserts no recognized cause of action, but only a generalized grievance about the manner in which courts interpret laws.

Kaetz's claims for injunctive relief under the APA and the All Writs Act will be dismissed.

*   *   *

Kaetz's constitutional challenge of 11 U.S.C. § 523(a)(8) is precluded by the doctrine of collateral estoppel and must be dismissed. As for his remaining claims, Kaetz does not plead facts sufficient to state a claim under any of the counts his complaint may reasonably allege. The remainder of Kaetz's complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[16]

## IV.   MOTION FOR RECONSIDERATION

Kaetz moves for reconsideration of this Court's administrative termination of his January 9, 2023 motion for summary judgment. Given that I have now dismissed Kaetz's complaint in its entirety, his motion for reconsideration will be denied as moot.[17]

---

[16] In conjunction with their motions to dismiss, certain Defendants request that this Court take steps to bar Kaetz from filing additional complaints against them. (Schuckit MTD at 14-15; Equifax MTD at 3-4.) In *Matter of Packer Ave. Assoc.*, 884 F.2d 745 (3d Cir. 1989) the Third Circuit recognized that the All Writs Act, 28 U.S.C. § 1651, gives this District Court the power to issue an injunction to restrict the filing of meritless pleadings. However, the Third Circuit cautioned that it is an extreme remedy which must "be narrowly tailored and sparingly used." 884 F.2d at 747.

I am sympathetic to Defendants' frustrations in that they are being called upon to litigate frivolous claims that were conclusively resolved in prior proceedings. Kaetz's contentions are frivolous in the extreme, and any further attempt to assert them may expose him to more drastic consequences than mere dismissal. I will not, however, issue an order barring Kaetz from filing future complaints against Defendants, a procedure which poses administrative and other difficulties of its own. Experience teaches that litigation over whether a new complaint violates the precise terms of an injunction may merely add a layer of complication to what should be an ordinary motion-to-dismiss analysis, accompanied by (if appropriate) a motion for sanctions.

I therefore decline—at the present time—to issue an order enjoining Kaetz from filing further claims against these Defendants.

[17] Kaetz's motion for reconsideration would have been denied even if I had not yet dismissed his complaint. In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be

## V.  CONCLUSION

For the reasons set forth above, Kaetz's motions to strike Defendants' motions to dismiss are **DENIED**, Defendants' motions to dismiss the complaint are **GRANTED**, and Kaetz's motion for reconsideration of this Court's administrative termination of his summary judgment motion is **DENIED**.

The collateral estoppel dismissal (Part III.A, *supra*) and denial of reconsideration (Part IV, *supra*) are entered **with prejudice,** because amendment would be futile and the matters have been thoroughly litigated elsewhere. The remaining rulings are entered without prejudice to the submission, within 30 days, of a proposed amended complaint.

An appropriate order follows.

Dated: March 30, 2023                            /s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

---

granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration … is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014). Here, Kaetz points to no new evidence, no change in controlling law, and no error of law that requires reconsideration of a routine administrative action this Court properly took in overseeing and managing its docket. It is obviously logical to decide whether a plaintiff has stated a cause of action at all before addressing a plaintiff's motion for summary judgment, and the Court has done no more than that.